1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT H. JACKSON,

11           Petitioner,                    No. CIV S-05-0081 FCD KJM P

12       vs.

13   SCOTT KERNAN, Warden,

14           Respondent.              FINDINGS & RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2000 conviction on

18   charges of possessing marijuana in prison.  He seeks relief on the grounds that jury instruction

19   error violated his right to due process and his sentence constitutes cruel and unusual punishment.

20   I.  Background[1]

21          A jury convicted defendant Robert Henry Jackson of possessing
             marijuana in prison (Pen. Code, § 4573.6); further section
22           references are to the Penal Code) and found that he had two prior
             serious felony convictions (§§ 667, subds. (b) - (I), 1170.12) for
23           murder (§ 187) and attempted robbery (§§ 211, 664).  He was
             sentenced to a term of 25 years to life, to be served consecutively
24

25          [1]  This statement of facts is taken from the August 5, 2003 opinion by the California
     Court of Appeal for the Third Appellate District (hereinafter Opinion), filed by Respondent on
26   August 22, 2005 as Lodged Document No. 3.

                                            1

1   to the prison term he was then serving for the murder and
2   attempted robbery.

                              * * *

3
4   Defendant, an inmate at California State Prison, Sacramento, was
    visited in May 1998 by Demetria Carter.  While in the prison
5   visitation room, Carter got up and used the restroom.  When she
    returned, Carter pulled a bag of plain "M&M's" candy from her
    pants.  Defendant picked up the bag of candy, tore it open with his
6   teeth, and emptied some of the contents into his mouth.  He then
    drank from a carton of milk and swallowed without chewing.  He
7   repeated this process several times.

8   A correctional officer who was conducting video surveillance of
    the visit testified that Carter did not purchase the M&M bag at the
9   nearby vending machines and, thus, the officer believed that
    defendant was swallowing contraband rather than candy.
10
    The officer continued surveillance through the end of the visit.
11  Thereafter, defendant was put on body cavity surveillance.  A few
    days later, he defecated 15 round plastic-wrapped bindles.
12  Laboratory testing revealed that the bindles contained 28.77 grams
    of marijuana, a useable amount.
13

14  (Opinion at 1-2.)

15  II.  Standards for a Writ of Habeas Corpus

16          An application for a writ of habeas corpus by a person in custody under a

17  judgment of a state court can be granted only for violations of the Constitution or laws of the

18  United States.  28 U.S.C. § 2254(a).

19          Federal habeas corpus relief is not available for any claim decided on the merits in

20  state court proceedings unless the state court's adjudication of the claim:

21          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established federal law, as
22          determined by the Supreme Court of the United States; or

23          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
24          State court proceeding.

25   28 U.S.C. § 2254(d).

26  /////

2

1    Although "AEDPA does not require a federal habeas court to adopt any one

2    methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles which

3    guide its application.

4    First, the "contrary to" and "unreasonable application" clauses are different.  As

5    the Supreme Court has explained:

> 6    A federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the governing
> 7    law set forth in our cases, or if it decides a case differently than we
> have done on a set of materially indistinguishable facts.  The court
> 8    may grant relief under the "unreasonable application" clause if the
> state court correctly identifies the governing legal principle from
> 9    our decisions but unreasonably applies it to the facts of the
> particular case.  The focus of the latter inquiry is on whether the
> 10   state court's application of clearly established federal law is
> objectively unreasonable, and we stressed in Williams [v. Taylor,
> 11   529 U.S. 362 (2000)] that an unreasonable application is different
> from an incorrect one.

12

13   Bell v. Cone, 535 U.S. 685, 694 (2002).  It is the habeas petitioner's burden to show the state

14   court's decision was either contrary to or an unreasonable application of federal law.  Woodford

15   v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002).  It is appropriate to look to lower court

16   decisions to determine what law has been "clearly established" by the Supreme Court and the

17   reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597,

18   598 (9th Cir. 2000).

19   Second, the court looks to the last reasoned state court decision as the basis for the

20   state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  So long as the state

21   court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter

22   how brief.  Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).

23   However, when the state court does not issue a "reasoned opinion," this court must undertaken

24   an independent review of the claims.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002).

25   Third, in determining whether a state court decision is entitled to deference, it is

26   not necessary for the state court to cite or even be aware of the controlling federal authorities "so

1   long as neither the reasoning nor the result of the state-court decision contradicts them." Early v.

2   Packer, 537 U.S. 3, 8 (2003).  Moreover, a state court opinion need not contain "a formulary

3   statement" of federal law, so long as the fair import of its conclusion is consonant with federal

4   law. Id.

5   III.  Petitioner's Claims

6           A.  Jury Instruction Error

7                   In three separate claims, petitioner argues that jury instruction error violated his

8   right to due process.  After setting forth the applicable legal principles, the court will evaluate

9   these claims in turn below.

10                  1.  Legal Standards

11                  A challenge to jury instructions does not generally state a federal constitutional

12  claim.  See Middleton v. Cupp, 768 F.2d at 1085 (citing Engle v. Isaac, 456 U.S. 107, 119

13  (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  Habeas corpus is unavailable

14  for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085;

15  see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d

16  1378, 1381 (9th Cir. 1986).  However, a "claim of error based upon a right not specifically

17  guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief

18  where its impact so infects the entire trial that the resulting conviction violates the defendant's

19  right to due process."  Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981), aff'd 703 F.2d 575

20  (9th Cir. 1983) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)).  See also Prantil v.

21  California, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must

22  demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction

23  violates due process.").  The analysis for determining whether a trial is "so infected with

24  unfairness" as to rise to the level of a due process violation is similar to the analysis used in

25  determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a

26  /////

4

1 | substantial and injurious effect" on the outcome.  See McKinney v. Rees, 993 F.2d 1378, 1385

2 | (9th Cir. 1993).

3 |                2.  CALJIC No. 1.00

4 |         The state court record reflects that petitioner's jury was instructed with CALJIC

5 | No. 1.00, as follows:

> You must not be influenced by pity for or prejudice against a
> defendant.  You must not be biased against a defendant because he
> has been arrested for this offense, charged with a crime, or brought
> to trial.  None of these circumstances is evidence of guilt and you
> must not infer or assume from any or all of them that a defendant is
> more likely to be guilty than not guilty.  You must not be
> influenced by sentiment, conjecture, sympathy, passion, prejudice,
> public opinion or public feeling.  Both the People and a defendant
> have a right to expect that you will conscientiously consider and
> weigh the evidence, apply the law, and reach a just verdict
> regardless of the consequences.

12 | (Clerk's Transcript on Appeal (CT) at 59.)  Petitioner claims that this jury instruction, by virtue

13 | of its language stating that the jury must not assume from the fact of arrest and trial that a

14 | "defendant is more likely to be guilty than not guilty," impermissibly lessened the prosecutor's

15 | burden of proving guilt beyond a reasonable doubt.  (Pet. at 5.)  Petitioner argues that the

16 | language of this instruction is inconsistent with the jury instruction defining reasonable doubt and

17 | confuses the jury with respect to the correct standard.  (Id. at 5-5a.)

18 |         Relying on state law, the California Court of Appeal concluded that CALJIC No.

19 | 1.00 did not mislead the jury or lower the prosecution's burden of proof.  (Opinion at 3-4.)  The

20 | appellate court explained that a reasonable juror would not construe the instruction as lowering

21 | the burden of proof, but would "understand [the] instruction as an advisement to disregard the

22 | facts that defendant had been arrested, charged, and brought to trial, and to presume the

23 | defendant innocent."  (Id. at 4.)  The court also noted that petitioner's jury was fully instructed on

24 | the reasonable doubt standard.  (Id.)

25 |         Petitioner has not cited any federal court decision holding that language such as

26 | that contained in CALJIC No. 1.00 is confusing or misleading or that it impermissibly lowers the

1   prosecution's burden of proof.  Petitioner therefore has failed to demonstrate that the California

2   courts' rejection of his federal due process claim was contrary to or an unreasonable application

3   of "clearly established Federal law, as determined by the Supreme Court of the United States."

4   28 U.S.C. § 2254(d)(1).  See Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006), cert.

5   denied, __ U.S. __, 127 S. Ct. 1834 (2007) (denying the petitioner's due process claim because

6   "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required

7   by AEDPA"); Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004) (denying petitioner's jury

8   instruction claim because "no Supreme Court case establishes that [the challenged instruction]

9   violates an existing constitutional right").   Accordingly, petitioner is not entitled to relief on this

10  claim.

11                            3.  CALJIC No. 17.41.1

12                    Petitioner's jury also was instructed with CALJIC No. 17.41.1, which provides as

13  follows:

14          The integrity of a trial requires that jurors, at all times during their
            deliberations, conduct themselves as required by these instructions.
15          Accordingly, should it occur that any juror refuses to deliberate or
            expresses an intention to disregard the law or to decide the case
16          based on penalty or punishment, or any other improper basis, it is
            the obligation of the other jurors to immediately advise the Court
17          of the situation.

18  (CT at 98).  Petitioner claims this jury instruction violated his right to "a fair trial and to a

19  unanimous jury verdict based on the individual opinion of each juror."  (Pet. at 5.)  He contends

20  the instruction "intruded into the secrecy and autonomy of the jury deliberation process" by

21  imposing on the jurors an obligation to "police the deliberations" of fellow jurors and report any

22  perceived acts of misconduct to the trial judge.  (Id. at 5, 5b.)  Petitioner also argues that this jury

23  instruction "chills" free debate between jurors and forces jurors to conform their views to those

24  of the majority.  (Id. at 5b.)

25                    Petitioner's claim for relief is foreclosed by the decision in Brewer.  In that case,

26  the Ninth Circuit held that, regardless of the "constitutional merits" of CALJIC No. 17.41.1,

1   habeas corpus relief was unavailable on the identical claim presented by petitioner here because

2   there is "no Supreme Court precedent clearly establishing" that use of this jury instruction

3   violates a defendant's constitutional rights.  378 F.3d at 955-56.  Here, as in Brewer, petitioner

4   "has pointed to no Supreme Court precedent clearly establishing that CALJIC 17.41.1--either on

5   its face or as applied to the facts of his case--violated his constitutional rights."  Id. at 957.  Thus,

6   the state court's rejection of petitioner's jury instruction claim was not contrary to or an

7   unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d).[2]

8          Even if the state trial court erred in instructing the jury with CALJIC No. 17.41.1,

9   any error was harmless under the circumstances of this case.  See Brecht, 507 U.S. at 623 (federal

10  court may not grant habeas relief for trial errors without a showing of actual prejudice, defined as

11  a "substantial and injurious effect or influence in determining the jury's verdict").  There is no

12  evidence that any of the jurors at petitioner's trial were unable to deliberate freely or that any

13  juror voted against his/her conscience out of a sense of intimidation.  There is simply no

14  indication that the giving of CALJIC No. 17.41.1 in this case chilled the jurors' exercise of free

15  speech or prevented free and full deliberations on the part of the jury.  Accordingly, petitioner is

16  not entitled to relief on this claim.

17          4.  Jury Instruction on Reasonable Doubt

18          Petitioner's next claim is that the jury instruction on reasonable doubt given at his

19  trial violated his right to due process.  He argues that the instruction "reduced the prosecutor's

20  burden of proof to something less than required."  (Pet. at 6.)

21  /////

22  /////

23

24          [2]  In People v. Engelman, 28 Cal.4th 436, 439-40 (2002), the California Supreme Court
    held that CALJIC No. 17.41.1 "does not infringe upon defendant's federal or state constitutional
    right to trial by jury or his state constitutional right to a unanimous verdict."  28 Cal.4th at 439-
25  40.  However, using its supervisory authority over the lower state courts, the California Supreme
    Court discontinued the use of CALJIC No. 17.41.1 because of its "potential" to intrude on jury
26  deliberations.  Id. at 440.

1            The jury in this case was instructed with the current version of CALJIC No. 2.90,

2    which provides, in relevant part, as follows:

3            Reasonable doubt is defined as follows:  It is not a mere possible
             doubt; because everything relating to human affairs is open to
4            some possible or imaginary doubt.  It is that state of the case
             which, after the entire comparison and consideration of all the
5            evidence, leaves the minds of the jurors in that condition that they
             cannot say they feel an abiding conviction of the truth of the
6            charge.

7    (CT at 87.)

8            Prior to its modification in 1994, the instruction stated in relevant part:

9            Reasonable doubt is defined as follows:  It is not a mere possible
             doubt; because everything relating to human affairs, **and
10           depending on moral evidence**, is open to some possible or
             imaginary doubt.  It is that state of the case which, after the entire
11           comparison and consideration of all the evidence, leaves the minds
             of the jurors in that condition that they cannot say they feel an
12           abiding conviction, **to a moral certainty**, of the truth of the
             charge.

13

14   (CALJIC No. 2.90 (1927) (emphasis added)).  In <u>Victor v. Nebraska</u>, 511 U.S. 1 (1994), the

15   United States Supreme Court upheld the constitutionality of this pre-1994 instruction, but

16   criticized the use of the terms "moral evidence" and "moral certainty."  <u>Id</u>. at 10-14.  Subsequent

17   to the decision in <u>Victor</u>, the California Supreme Court suggested that the instruction should be

18   revised to delete the terms "moral evidence" and "moral certainty" in order to prevent future

19   convictions from being reversed on the basis of the instruction.  In this regard, the California

20   Supreme Court stated:

21           "A slight modification in view of (the Victor) decision might be
             deemed safe, indeed safer than not making it.  The high court made
22           clear that the terms "moral evidence" and "moral certainty" add
             nothing to the jury's understanding of reasonable doubt.  It thus
23           seems that trial courts might, in the future, safely delete the
             following phrases in the standard instruction:  "and depending on
24           moral evidence," and "to a moral certainty."

25   <u>People v. Freeman</u>, 8 Cal.4th 450, 504 (1994).  CALJIC No. 2.90 was subsequently revised

26   accordingly, and it is the revised instruction that was given to petitioner's jury.

8

1       Petitioner's challenge to CALJIC No. 2.90 has been explicitly rejected by the

2   Ninth Circuit Court of Appeals and is therefore unavailing.  See Lisenbee v. Henry, 166 F.3d

3   997, 999 (9th Cir. 1999).  Moreover, in state criminal trials, the Due Process Clause of the

4   Fourteenth Amendment "protects the accused against conviction except upon proof beyond a

5   reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re

6   Winship, 397 U.S. 358, 364 (1970).  "[T]he Constitution does not require that any particular

7   form of words be used in advising the jury of the government's burden of proof.  Rather, 'taken

8   as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the

9   jury.'"  Victor, 511 U.S. at 5 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)

10  (internal citation omitted)).  In evaluating the constitutionality of a jury charge such as this one, a

11  court must determine "whether there is a reasonable likelihood that the jury understood the

12  instructions to allow conviction based on proof insufficient to meet the Winship standard."

13  Victor, 511 U.S. at 6.  See also Ramirez v. Hatcher, 136 F.3d 1209, 1211 (9th Cir. 1998).

14      Petitioner has failed to demonstrate a reasonable likelihood that the jury

15  understood the instructions given at his trial either to suggest a standard of proof lower than due

16  process requires or to allow conviction on factors other than the prosecution's proof.  Reviewing

17  the instructions in their entirety, this court finds no reasonable likelihood that the jury

18  misunderstood the government's burden of proving guilt beyond a reasonable doubt.  In addition

19  to being given CALJIC 2.90, the jury was instructed that it "must determine what facts have been

20  proved from the evidence received in the trial and not from any other source."  (CT at 58.)  The

21  jury also was instructed that it could not find petitioner guilty based on circumstantial evidence

22  "unless the proved circumstances are not only (1) consistent with the theory that the defendant is

23  guilty of the crime, but (2) cannot be reconciled with any other rational conclusion."  (Id. at 70.)

24  Finally, the jury was told that the prosecution had the burden "of proving [petitioner] guilty

25  beyond a reasonable doubt."  (Id. at 87.)  These instructions, along with CALJIC 2.90, adequately

26  informed the jury of the prosecution's burden to prove the case against petitioner beyond a

9

1    reasonable doubt based on an analysis of the totality of the evidence introduced at trial.  The

2    Supreme Court has held that "[a]n instruction cast in terms of an abiding conviction as to guilt,

3    without reference to moral certainty, correctly states the government's burden of proof."  Victor,

4    511 U.S. at 14.

5              This court concludes that the modified CALJIC 2.90 given to petitioner's jury was

6    a reasonable response to the Supreme Court's decision in Victor.  Further, taken as a whole, the

7    instructions correctly conveyed the concept of reasonable doubt to the jury.  Lisenbee, 166 F.3d

8    at 999; Ramirez, 136 F.3d at 1214.  Petitioner has failed to demonstrate that the state court's

9    decision upholding the constitutionality of this jury instruction was contrary to, or involved an

10   unreasonable application of, federal law.  Accordingly, relief as to this claim must be denied.

11              B.  Cruel and Unusual Punishment

12             Petitioner claims that his sentence of twenty-five-years-to-life under California's

13   Three Strikes law constitutes cruel and unusual punishment because it is grossly disproportionate

14   to the crime of his conviction.  Petitioner notes that his sentence for possession of marijuana is

15   only slightly less than his thirty-years-to-life sentence for a prior murder, burglary and attempted

16   robbery.  (Pet. at 6.)  He argues that imposing essentially the same sentence for possession of a

17   small amount of contraband and murder "cheapens the coinage of imprisonment."  (Id. at 6b.)

18   He contends that "the punishment must fit the crime and in this case the actual punishment does

19   not fit the crime."  (Id. at 6c.)

20             On direct appeal in state court, petitioner argued that his trial counsel rendered

21   ineffective assistance when he failed to raise a claim at sentencing that petitioner's twenty-five-

22   years-to-life sentence constituted cruel and usual punishment, in violation of the California and

23   United States Constitutions.  (See Opinion at 6.)  The California Court of Appeal rejected this

24   argument on the grounds that "trial counsel undoubtedly understood that a cruel and unusual

25   /////

26

1  punishment arguments lacks merit and would have been futile." (Id.)  The court explained its

2  reasoning as follows:

> 3  "When the California Legislature enacted the three strikes law, it
> 4  made a judgment that protecting the public safety requires
>    incapacitating criminals who have already been convicted of at
>    least one serious or violent crime.  Nothing in the Eighth
> 5  Amendment prohibits California from making that choice.  To the
>    contrary. . . 'States have a valid interest in deterring and
> 6  segregating habitual criminals.'" (Ewing v. California (2003) 538
>    U.S. ___ [155 L.Ed.2d 108, 120] [lead opn. of O'Connor, J.).)
> 7  "Recidivism is a serious public safety concern in California and
>    throughout the Nation" (ibid.) and "has long been recognized as a
> 8  legitimate basis for increased punishment." (Ibid.)  Thus, the
>    "State of California has a reasonable basis for believing that
> 9  dramatically enhanced sentences for habitual felons 'advance[s] the
>    goals of [its] criminal justice system in a[] substantial way'" (id. at
> 10 p. ___ [155 L.Ed.2d at pp. 121-122]) to deter repeat offenders and
>    protect the public by, at some point, segregating repeat felons from
> 11 the rest of society for extended periods of time. (Id. at p. ___ [155
>    L.Ed.2d at p. 121].)
>
> 12
>
> 13 "'The Eighth Amendment does not require strict proportionality
>    between crime and sentence.  Rather, it forbids only extreme
>    sentences that are "grossly disproportionate" to the crime.'"
> 14 (Ewing v. California, supra, 538 U.S. at p. __ [155 L.Ed.2d at pp.
>    119, 127] (lead opn. of O'Connor, J., & dis. opn. of Breyer, J.).)
>
> 15
>
> 16 Defendant, an inmate in state prison, was convicted of the felony
>    offense of possessing marijuana in prison after he secreted the drug
>    by swallowing 15 bindles of marijuana a visitor brought to him.
> 17 "In weighing the gravity of [defendant's crime,] we must place on
>    the scales not only his current felony, but also his long history of
> 18 felony recidivism.  Any other approach would fail to accord proper
>    deference to the policy judgments that find expression in the
> 19 legislature's choice of sanctions." (Ewing v. California, supra, 538
>    U.S. at p. __ [155 L.Ed.2d at p. 122].)

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

1
2
3
4
5
6
7

> Just like Ewing's three strikes sentence of 25 years to life for grand theft of golf clubs, defendant's three strikes sentence of 25 years to life for possessing marijuana in state prison was "justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record." (Ewing v. California, supra, 538 U.S. __ [155 L.Ed.2d at p. 123].)  Defendant's current felony is more serious than Ewing's latest felony because it occurred in state prison and implicated the correctional goal of institutional security. (People v. Harris, supra, 83 Cal.App.4th at p. 376.)  And defendant's criminal history is more egregious than Ewing's because it includes a conviction of first degree murder. (Ewing v. California, supra, 538 U.S. at p. )__ [155 L.Ed.2d at pp. 115-116].)

8   (Id. at 9-11.)

9   In  Andrade, the United States Supreme Court found that in addressing an Eighth

10   Amendment challenge to a prison sentence, the "only relevant clearly established law amenable

11   to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality

12   principle, the precise contours of which are unclear and applicable only in the 'exceedingly rare'

13   and 'extreme' case."  538 U.S. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991);

14   Solem v. Helm, 463 U.S. 277, 290 (1983), and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).

15   The Andrade court concluded that two consecutive twenty-five-years-to-life sentences with the

16   possibility of parole, imposed under California's Three Strikes law following two petty theft

17   convictions with priors, did not amount to cruel and unusual punishment.  Id. at 77; see also

18   Ewing, 538 U.S. at 11 (holding that a sentence of twenty-five-years-to-life imposed for felony

19   grand theft of three golf clubs under California's Three Strikes law did not violate the Eighth

20   Amendment).

21   Following the decision in Andrade, the United States Court of Appeals for the

22   Ninth Circuit held that a third strike sentence of twenty-five years to life in prison for a third

23   shoplifting offense, a "wobbler" under state law[3], constituted cruel and unusual punishment.

24   Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004).  In so holding, the court relied upon the limited

25

26   [3] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony under applicable law.  See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004).

1  and non-violent nature of the petitioner's prior criminal history and the fact that the petitioner's

2  only prior period of incarceration had been a single one-year jail sentence. Id. at 768-69.

3  Thereafter, in Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004), another panel of the Ninth Circuit

4  distinguished the holding in Ramirez, finding that the petitioner in Rios had a "lengthy criminal

5  history," had "been incarcerated several times," and that the prior strikes used to enhance the

6  petitioner's sentence had "involved the threat of violence." Id. at 1086.  Finally, in Taylor v.

7  Lewis, 460 F.3d 1093 (9th Cir. 2006), the Ninth Circuit upheld a sentence of twenty-five-years-

8  to-life imposed for possessing 0.036 grams of cocaine, where the petitioner's prior history

9  included crimes of violence, including murder.

10        This court finds in this case petitioner's sentence does not fall within the type of

11  "exceedingly rare" circumstance that would support a conclusion that his sentence violates the

12  Eighth Amendment.  Petitioner's argument focuses solely on the gravity of his most recent

13  offense.  However, because petitioner was sentenced as a recidivist under California's Three

14  Strikes law, "in weighing the gravity" of his offense for purposes of a proportionality analysis,

15  the court "must place on the scales not only his current felony," but also his criminal history.

16  Ewing, 538 U.S. at 29.  This is not a case in which the petitioner's criminal history is comprised

17  solely of non-violent offenses stemming from a single, dated incident and single guilty plea

18  resulting only in a one-year jail (as opposed to prison) sentence. See Ramirez, 365 F.3d at 768-

19  69.  Rather, as noted by the California Court of Appeal:

20          [Petitioner's] criminal history shows that he became a habitual,
            violent offender at a young age.
21
            He was 17 years old in April 1990, when he and a companion
22          demanded money from a "male victim, then pulled the victim's
            $200 ski jacket off his person and fled."
23
            He was 17 years old in September 1990, when he "entered his
24          school nurse's office, removed $50 in cash and several credit cards
            from her purse, then wrote gang graffiti on the bathroom wall in
25          the nurse's office."

26  /////

13

1    He was 17 years old in March 1991, when he attempted to escape
     from officers after he and four companions surrounded a person,
2    punched him in the face and kicked him, and took a videocassette
     from him.
3

4    He was 18 years old in November 1991, when he committed the
     burglary, attempted robbery, and senseless murder of the store
5    clerk by shooting him in the heart.

6    And the following month, December 1991, he and a companion
     "performed a drive-by shooting in which . . . defendant fired a
7    sawed-off shotgun at two pedestrians, striking one of [them] with
     10 - 14 pellets."  Charges against defendant for this offense were
8    dismissed after he was convicted and sent to prison for murdering
     the store clerk.

9    (Opinion at 7-8.)

10          Although harsh, petitioner's sentence is not inconsistent with the sentences

11   imposed in the cases set forth above.  The sentence imposed was within statutory limits for the

12   offense committed by petitioner and was not grossly disproportionate to the crime of conviction

13   in light of his criminal history.  See Andrade, 538 U.S. at 77; see also Greenholtz v. Inmates of

14   the Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979) ("[t]here is no constitutional

15   or inherent right of a convicted person to be conditionally released before the expiration of a

16   valid sentence").  Under the circumstances presented by this case, the state courts' rejection of

17   petitioner's Eighth Amendment claim was neither contrary to nor an unreasonable application of

18   clearly established United States Supreme Court authority.  This claim for relief should therefore

19   be denied.

20          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

21   a writ of habeas corpus be denied.

22          These findings and recommendations are submitted to the United States District

23   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

24   days after being served with these findings and recommendations, any party may file written

25   objections with the court and serve a copy on all parties.  Such a document should be captioned

26   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14

1   shall be served and filed within ten days after service of the objections.  The parties are advised

2   that failure to file objections within the specified time may waive the right to appeal the District

3   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4   DATED:  March 14, 2008.

6                                       U.S. MAGISTRATE JUDGE

26   8:jackson81.hc